---

(91 App. Div. 194.)

## In re KOCH.

(Supreme Court, Appellate Division, First Department. February 5, 1904.)

1. MUNICIPAL CORPORATIONS—POLICE DEPARTMENT—DISMISSAL OF OFFICER—NEGLECT OF DUTY—EVIDENCE—SUFFICIENCY.

Evidence of a roundsman that a patrolman was sitting on a barrel, instead of walking his beat, when denied by the patrolman, whose testimony was to the effect that he was merely standing in the doorway, and was watching some people who were going away from a dance, singing, which was the same explanation he made to the roundsman at the time he was discovered by the latter, was insufficient to sustain a charge of neglect of duty warranting the patrolman's dismissal from the force.

Patterson, J., dissenting.

Certiorari on the relation of Christian W. P. Koch against Francis V. Greene, police commissioner, to review relator's dismissal from the police force. Proceedings annulled, and relator reinstated.

The relator was charged with neglect of duty, the specification being that "said patrolman, Christian W. P. Koch, was sitting on a barrel in front of No. 639 Lexington avenue at 2:37 a. m., March 16, 1903, during his tour of

patrol duty." The entire testimony upon the trial was that of Roundsman James O'Hara, who made the charge, and the relator, and is as follows: "Q. (to the roundsman). State what you know about the case. A. On the morning in question I reached the officer's post—the northerly end of it—and traveled south, and in front of No. 639 Lexington avenue I found the officer sitting on a barrel. I asked him if sitting on a barrel was the way to patrol. He said he was watching some people. I told him I would prefer charges against him, and ordered him to patrol his post, which he did." "Q. (to relator). What have you to say? A. I was simply leaning in the doorway, watching people. Q. You were sitting? A. No, sir; just standing in the doorway. Q. Was he sitting on a barrel or standing? (Roundsman O'Hara, recalled). Sitting on a barrel. Q. And the only explanation that he gave was that he was watching somebody? A. Well, when he saw me he jumped off the barrel, and there was some people coming from the Jewish ball, and they were having a little quiet song, but not making any disturbance, and he told me he was watching those people; but I saw the people two blocks away. Q. Is there anything further you want to state to the court? The Defendant: No, sir. Q. Any other testimony you want to give? A. No, sir." Upon this evidence the relator was dismissed on March 20, 1903, and by writ of certiorari he now seeks reinstatement.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Charles E. Hunter, for appellant.

Theodore Connoly, for respondent.

O'BRIEN, J. Considering the great responsibility placed upon the head of the police department, the importance of the interests confided to the protection of the department, and the necessity for requiring the highest degree of discipline and efficiency in the force, we recognize that, within the limits of the power conferred upon him by law of examining into the conduct of police officers, the widest latitude and discretion should be accorded to the commissioner. Ordinarily, therefore, we are not disposed in this class of cases to interfere with the judgment of the commissioner either in his determination of disputed questions of fact or his conclusion as to the extent of the punishment that should be administered upon finding that a police officer has been guilty of a charge in violation of the rules of the department. We cannot, however, entirely divest ourselves of the jurisdiction which has been conferred to review these trials, nor refrain from exercising such jurisdiction when satisfied that an injustice has been done. Where, therefore, the facts are not in dispute, and the charge itself is trivial, there would be no reason for the provision of law giving an officer dismissed the right to have the proceedings reviewed, if, upon being convinced that there was error in the conclusion reached upon the facts, we did not exercise our jurisdiction in reversing the dismissal. There is no evidence as to how long the relator was sitting on the barrel, and the roundsman says that when the relator saw him he jumped off. It was nighttime, and the opportunity for mistake, under such circumstances, was great. The relator denied that he was actually sitting, but said he was leaning in the doorway; and the explanation upon the trial of his doing so was the same that he gave to the roundsman at the time, namely, that he was watching some people. The roundsman admits that relator was on his post in plain view, and that there were people on the way home from a ball, who were singing, although making no

disturbance, and thus the relator's explanation of his not patroling his post was to some extent corroborated. The object of patroling is to detect and suppress disturbances, and merely stopping for observation was not shown to be an infraction of any rule of the department. This case in some features and in principle is like People ex rel. Howard v. Roosevelt, 15 App. Div. 401, 44 N. Y. Supp. 102, where the police officer was sitting on a box, and there was no evidence that he had been there any length of time, and he explained his being there by saying he felt the effects of a wound. It differs from People ex rel. Butts v. MacLean (Sup.) 14 N. Y. Supp. 77, where an officer was discharged for lying down while on duty. There the relator's own testimony in part corroborated that of the roundsman that he was lying down when he should have been patroling, and, besides, the record of the relator was considered, showing previous violations of the rules of the department.

Our conclusion is that the evidence to support the charge is unsatisfactory, and did not warrant the relator's dismissal. The writ should accordingly be sustained, the proceedings annulled, and the relator reinstated, with costs. All concur, except PATTERSON, J., who dissents.